HUNTER v. ALLEN et al.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

1. NOTES—TRANSFER—REAL PARTY IN INTEREST.
    Where plaintiff in an action on a note holds the legal title thereto by a valid transfer, he is the real party in interest, and entitled to recover as such, and defendant has no right to question the considerations and conditions upon which the transfer was made.
    [Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, § 1388.]

2. SAME—ACCOMMODATION PAPER—EVIDENCE—QUESTION FOR JURY.
    In an action on a note, evidence considered, and *held* to require submission to the jury of the question whether the note was accommodation paper.

Appeal from Trial Term, New York County.

Action by Wilson R. Hunter against Isaac N. E. Allen and another. From a judgment for plaintiff as against defendant Allen, but dismissing the complaint as against Alexander S. Bacon, plaintiff and said Allen appeal. Reversed in part.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

William H. Janes, for appellant Allen.
Louis Sturcke, for appellant Hunter.
Alexander S. Bacon, pro se.

O'BRIEN, P. J. This action is brought upon two promissory notes made by the firm of I. N. E. Allen & Co., composed of the defendants, to the order of the North State Lumber Company, indorsed by the latter, discounted for its benefit before maturity by the First National Bank of Durham, N. C., and after maturity transferred by the bank to the plaintiff. At the close of the trial the court dismissed the complaint as to the defendant Bacon, and directed a verdict against the defendant Allen for the balance shown to be due upon the notes. From the judgment two appeals are taken—the first by Allen from that part which was entered on the verdict against him, and the second by the plaintiff from that part which dismissed the complaint as to the defendant Bacon.

The sole contention of the appellant Allen, as appears from his brief before this court, is that the complaint should have been dismissed as to him on the ground that the plaintiff is not the real party in interest, within the meaning of section 449 of the Code of Civil Procedure, and therefore not entitled to maintain the action. There is a complete answer to this contention, however, in the fact

that the evidence shows without dispute that the bank, which concededly was the owner and holder of the notes before and at maturity, thereafter transferred them by indorsement to the plaintiff, who now has the legal title thereto. This transfer being valid, and the plaintiff holding the legal right to the demand, the defendants have legally no interest to inquire further, as a payment to or recovery by the plaintiff, occupying this position, would protect them against any other claim based on the notes that might be made either by the bank or by another party. The transfer being valid, the considerations and conditions upon which it was given are of no materiality as bearing upon the plaintiff's right to maintain the action. The bank had the right, so far as the defendants were concerned, to sell the notes to the plaintiff for any consideration which it saw fit, even if it were inadequate, or it might give them to the plaintiff, or simply place him in a position where he could collect for the bank. Sheridan v. Mayor, 68 N. Y. 32; Brown v. Powers, 53 App. Div. 251, 65 N. Y. Supp. 733; St. James Co. v. Security Co., 82 App. Div. 251, 81 N. Y. Supp. 739, affirmed 178 N. Y. 560, 70 N. E. 1108; Brunnemer v. Cook & Bernheimer Co., 89 App. Div. 406, 85 N. Y. Supp. 954. It is enough to entitle the plaintiff to maintain the action that he has the legal title to the demand, and that the defendants would be protected in a payment to or recovery by him.

This brings us to a consideration of the appeal by the plaintiff from that part of the judgment which dismisses the complaint as to the defendant Bacon. The learned trial justice, in dismissing the complaint as to him, held, as matter of law, that the notes were accommodation paper made by the defendant Allen without the knowledge, consent, or authority of his copartner, Bacon, and were not given in the course of the partnership business; that the First National Bank of Durham had knowledge of all these facts at the time it discounted the notes, and for these reasons there could be no recovery against Bacon. The rule which the court followed in reaching this conclusion is undoubtedly correct. Smith v. Weston, 88 Hun, 25, 34 N. Y. Supp. 557, affirmed 159 N. Y. 194, 54 N. E. 38. But under the evidence presented in this case, it was error to hold, as matter of law, that the notes were accommodation paper. That was a question of fact for the jury.

As bearing upon this subject, it appears that the firm of Allen & Co., composed of the two defendants, were wholesale dealers engaged in buying and selling lumber. Allen was the general manager, Bacon apparently not participating actively in the business; and, so far as the evidence shows, he knew nothing about the transactions involved in this litigation until long after the notes had reached maturity. Indeed, it seems that for some time before they were given there had been practically a discontinuance of the partnership business, although Allen still continued to use the firm name, and no notice of dissolution had been given. The legal existence of the partnership cannot, however, be assailed on this appeal, because the defendant Bacon in his answer admits it, by his

failure to deny the allegations of the complaint, which set out the continuance of the partnership during all the times mentioned therein. In dealing with the questions involved this court must therefore proceed upon the assumption that the copartnership existed, and that the firm was bound by whatever was lawfully done in the course of its business by the active partner, Allen.

As to the North State Lumber Company, it appears that it was a foreign corporation engaged in cutting timber, transforming it into lumber, and selling it in the general market. On January 8, 1900, through its president, Cochran, it wrote to Allen & Co., stating that it had a large quantity of hardwood timber, and that it desired to deal with an Eastern firm with a view of making an arrangement for disposing of its lumber and receiving financial assistance. As to this the letter states:

"We also wish to deal with such a house that will share with us some of their strength financially. We do not care for money in advance, for we have good credit of our own; but to give you an example of how we would like to deal is this: to allow us to draw three and four months drafts, and have them accepted, which we will discount here in our own bank and during the maturity of said drafts, we will ship lumber to cover same. Now if you can see your way clear to enter into such an agreement with us, we will consider dealing with you."

In response, Allen & Co., through their managing partner, Allen, wrote on January 15th, requesting further details as to the standing of the corporation, and the quantity of lumber which it could furnish; the letter saying:

"If you can give us business enough to warrant our keeping a representative there, we are not entirely prejudiced against your proposition in financing and we would consider it favorably."

These letters speak for themselves, and upon the same subject the plaintiff called the witness Heartt, the cashier of the bank, who testified that in the following March, Cochran introduced him to Allen; stating in the introduction that Allen "was down there for the purpose of representing the firm of I. N. E. Allen & Co., who had taken an interest in the North State Lumber Company." It appears that this conversation occurred before the bank discounted any of Allen & Co.'s paper, but Heartt states that shortly thereafter, and in April, the first paper came to the bank, and was discounted by it. He further testified that it was the purpose of Allen & Co. to assist the corporation financially, and "to get in return for that the output of their mill"; that he was told by Allen, in relation to the notes given by the firm, that they were—

"Based on the lumber that the firm of I. N. E. Allen & Co. were to take. The shipments of lumber, as I understood it, from them were to be made and taken in hand by Mr. Allen's firm, and such lumber as could not be used here was sold in the local market."

The witness Manning, one of the attorneys of the bank and a director, also testified that Mr. Allen told him—

"That the firm of I. N. E. Allen & Co., being wholesale lumber dealers in New York, were to take an interest in—were interested in—the North State Lumber Company, who were manufacturing lumber at Durham, or near Durham, and in Montgomery county, the western part of North Carolina,

and that Allen & Co. were to have the entire output of the North State Lumber Company, both at Marianna and Montgomery county, and also at Durham, except such lumber as was not fit for sale in the New York market; such as they could dispose of locally."

In addition to this testimony, several letters were introduced, which need not be referred to in detail, further than to say that they contain recitals to the effect that the corporation was expecting and endeavoring to furnish lumber to Allen & Co. in order that the firm might dispose of it in the New York market. And as tending to show that the notes were given in pursuance of the understanding refered to in the above evidence, it was proven without contradiction, and from the books of Allen & Co., that from July to October—the notes being dated in August—there was shipped by the corporation to the firm lumber of the value of $718.79, on account of the sale of which by the firm the corporation was credited with $393.79.

From this recital of the evidence it is apparent that the jury might have found that the notes were given in the course of the business of Allen & Co. as wholesale dealers in lumber, in order that they might obtain lumber to sell, and thereby earn a commission or make a profit, and that the corporation, in return for the notes, was to ship to the firm lumber, the value of which would be credited upon them. In other words, that the notes were given in consideration of lumber to be furnished to the firm by the corporation intermediate their date and their maturity. This understanding would make Allen & Co. the party that would ultimately pay the notes, and they would receive full value therefor in lumber furnished by the corporation. The presumption that this was the understanding and agreement upon which the notes were given is strengthened somewhat by the form of the notes themselves. They contain recitals that they are given for "value received," and it will be observed that Allen & Co. is the maker, and not the indorser. Had the notes been accommodation paper, intended to be ultimately paid by the lumber company, with Allen & Co. only assuming the liability of a surety, then the usual commercial practice would have dictated that the notes should be made, not as they were, but with the corporation as maker, and the firm simply as indorser. Although the defendant Bacon denied that the notes were given for value, we think the evidence above cited was sufficient to warrant the jury in finding otherwise.

We are also of the opinion that the evidence would have justified a finding by the jury that Allen & Co. subsequent to the discount of the notes received a part of the proceeds thereof through checks drawn by the lumber company to the firm upon the account into which the proceeds of the notes went. The testimony upon this subject, however, is not entirely satisfactory, and we do not wish to base our decision upon it, nor need it be adverted to in detail, as it may be changed materially upon the retrial which must necessarily be ordered.

This discussion is sufficient to indicate that in our opinion the learned trial court was in error in holding, as matter of law, that

the notes, as to Allen & Co., were accommodation paper, which the bank took and discounted with knowledge of that fact; and, while we have considered the other questions raised by the plaintiff appellant, we do not deem it necessary to pass upon them, in view of the conclusion just stated, as they may not again arise.

It follows from what has been said that the appeal of the defendant Allen is without merit, and so much of the judgment as he appeals from must be affirmed, with costs to the plaintiff, and that the part of the judgment which dismisses the complaint as to the defendant Bacon, and from which the plaintiff appeals, must be reversed, with costs to the plaintiff appellant to abide the event. All concur.

